[Cite as *Yemma v. Reed*, 2017-Ohio-1015.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DANIEL R. YEMMA, TREASURER, OF MAHONING COUNTY, OHIO, | ) ) ) | CASE NO. 16 MA 0015 |
| PLAINTIFF-APPELLEE, | ) ) | |
| VS. | ) ) | OPINION |
| LISA REED aka, LISA A. REED, et al., | ) ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
                             Pleas of Mahoning County, Ohio
                             Case No. 2014 CV 2545

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:       Atty. Thomas N. Michaels
                             Assistant Prosecuting Attorney
                             21 W. Boardman Street, 6th Floor
                             Youngstown, Ohio 44503

For Defendant-Appellant:      Atty. Bruce M. Broyles
                             5815 Market Street, Suite 2
                             Boardman, Ohio 44512

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                             Dated:  March 20, 2017

ROBB, P.J.

{¶1} Appellant Mathew Turner appeals the decision of the Mahoning County Common Pleas Court denying his motion to intervene in a tax foreclosure action filed by Appellee Daniel R. Yemma as Treasurer of Mahoning County, Ohio. If he is successful on intervention, Appellant also contends the court abused its discretion in alternatively denying his motion for relief from the foreclosure decree. For the following reasons, the trial court's decision denying Appellant's motion to intervene is affirmed. As such, the motion for relief from judgment need not be addressed.

## STATEMENT OF THE CASE

{¶2} On October 8, 2014, the Treasurer filed a tax foreclosure action against Lisa Reed, the record owner of property located at 128 S. Maryland Avenue in Youngstown. The action was brought under R.C. 323.25, R.C. 5721.18, and/or R.C. 323.78. The complaint asserted more than a year had passed since the taxes on the property were certified delinquent. The amount due was $2,673.95. After adding the costs of action, the amount owed was alleged to exceed the fair market value of the property. The property was said to be abandoned land under R.C. 323.65, nonproductive land under R.C. 5722.01, and/or delinquent vacant land under R.C. 5721.01. The Treasurer elected to invoke the alternative redemption period set forth in R.C. 323.78. The complaint also provided notice in the event title was requested by an electing subdivision, such as a county land reutilization corporation.

{¶3} Certified mail service was attempted at Ms. Reed's tax mailing address (on South Turner Road) and an alternate address (on Barrington Drive). Both were unsuccessful. An attempt was then made at an address on Rosemont Avenue, which was returned with the notation "refused." The summons and complaint were then sent by regular mail to the Rosemont address.

{¶4} On January 28, 2015, the assistant prosecutor representing the Treasurer filed an affidavit for service by publication, citing R.C. 5721.18(A) which permits service of notice by publication for three consecutive weeks. He stated the whereabouts of Ms. Reed were unknown and could not be ascertained with reasonable diligence; he outlined his efforts. Notice of the suit, which included the property address, was published for three weeks. Service by publication was completed on February 26, 2015.

**{¶5}** On April 2, 2015, the Treasurer filed a motion for default judgment, attaching the tax duplicate which showed the current delinquent amount of $3,221.98. The Treasurer also filed a motion to convey title to Mahoning County Land Reutilization Corporation without appraisal and sale, citing R.C. 323.65(K) and R.C. 323.78. The assistant prosecutor's affidavit was attached to show Mahoning County Land Reutilization Corporation requested title. A hearing was set for May 4.

**{¶6}** On May 5, 2015, the court issued a decree of foreclosure. The court found: the property qualified as nonproductive land under R.C. 5722.01(F) and abandoned land under R.C. 323.65(A); Mahoning County Land Reutilization Corporation elected to acquire the property; the Treasurer invoked the alternative redemption period pursuant to R.C. 323.78(A); $3,221.98 was due for delinquent taxes and other impositions, which represented a first and best lien; and the Treasurer was entitled to have this lien foreclosed under Chapter 5721.

**{¶7}** The sheriff was ordered to prepare a deed at the end of the 28-day alternative redemption period if the property was not redeemed. The decree announced that unless the defendant or any other party in interest caused to be paid the amount due and the costs of the action prior to the expiration of the 28-day alternative redemption period, the equity of redemption shall be extinguished and title to the property shall be transferred to Mahoning County Land Reutilization Corporation without any further confirmation by the court. *See* R.C. 323.28(E); R.C. 323.78(B); R.C. 5721.19(I). The court's order advised that title shall not be invalid because of any irregularity, informality, or omission of any proceeding under the tax foreclosure statutes or in any taxation process if such irregularity, informality, or omission does not abrogate any provision of such chapters for notice to holders of title, lien or mortgage to, or other interests in the foreclosed land. *See* R.C. 5721.19(F)(4).

**{¶8}** The property was not redeemed within the 28-day alternative redemption period, which expired on June 2, 2015. Consequently, title to the property was transferred to Mahoning County Land Reutilization Corporation.

**{¶9}** On November 20, 2015, Appellant Mathew Turner filed a motion to intervene in the action claiming he was the owner of the property. The motion stated:

an inspection of the real property would have revealed it was occupied; he was not named as an unknown occupant defendant; and service was not attempted on Lisa Reed at the subject property.

{¶10} Appellant's affidavit attested that he purchased the property from Lisa Reed on July 28, 2012 for $5,000. He attached a copy of a notarized deed. In the deed, Lisa Reed listed 128 S. Maryland Avenue as the property she was selling and as her address. The deed noted the sale of the property was subject to existing taxes and contained an instruction to mail tax statements to Matt Turner at 128 S. Maryland Avenue. Appellant's affidavit also stated:

> After I received the Deed from Lisa Reed I went to the Mahoning County Courthouse and attempted to record the Deed. A representative of the [sic] Mahoning County would not accept the Deed for recording and stated that I could not record the Deed as there were real estate taxes owed on the real property. I then began to pay the owners of the tax certificates for the delinquent Real Estate taxes; and I paid entities known as Net Relations, SAFE, and OKT LI. (Paragraph numbers omitted).

{¶11} Appellant said he hung curtains, started repairs to the house, and kept personal belongings at the premises. For instance, he said he had property in the yard and driveway, such as a camper. He said he was unaware of the foreclosure litigation until October 2015, when he saw a van from Mahoning County Land Reutilization Corporation in the driveway and decided to call to ascertain why. Appellant's affidavit explained: "If I am allowed to, I intend to bring the real estate taxes current by entering into a written contract for the repayment of delinquent real estate taxes."

{¶12} We note this affidavit was attached to a Civ.R. 60(B) motion rather than the motion to intervene. Still, both motions were filed on the same day. In his Civ.R. 60(B) motion, he argued the request was filed within a reasonable time as less than seven months passed since the May 5, 2015 foreclosure decree and he had no knowledge of the decree until October 2015. As for a meritorious defense, Appellant asserted a right to occupy the premises pursuant to the Protecting Tenants at

Foreclosure Act of 2009 ("PTFA") as a purchaser at a sheriff's sale takes the property subject to the tenant's rights (unless the purchaser intends to use it as his primary residence).[1]

{¶13} Appellant's motion for relief from judgment said he was the owner who would have been named a defendant in the foreclosure action if a county representative had not prevented him from recording his deed due to past due taxes. He also said he would have received notice if service had been attempted at the property address, stating: the Treasurer failed to visit the property; a visit would have provided knowledge the property was occupied; and any unknown occupant should have been made a party to the action. Appellant's motion claimed entitlement to relief under Civ.R. 60(B)(4) ("it is no longer equitable that the judgment should have prospective application") or (5) ("any other reason justifying relief from the judgment").

{¶14} The Treasurer filed a memorandum in opposition to both motions. As to intervention, the Treasurer argued the motion to intervene should be denied based on the following considerations: it was not accompanied by a pleading as required by Civ.R. 24(C); it was untimely; permitting intervention after final judgment is unusual; the deed said he was taking the land subject to taxes; he knew in 2012 that taxes were already delinquent; and he made no effort to pay taxes or to initiate a payment plan. The Treasurer noted a denial of intervention would render the motion for relief from judgment moot as a non-party cannot seek relief under Civ.R. 60(B).

{¶15} Alternatively, in opposing the motion for relief from judgment, the Treasurer argued (B)(4) does not apply as the circumstances raised by Appellant occurred prior to the entry judgment and a foreclosure action was foreseeable due to the failure to pay taxes. The Treasurer stated there were no extraordinary circumstances as required for application of (B)(5). The Treasurer urged the property owner must provide the Treasurer with any change in address for a tax bill under R.C. 323.13. *See J. Terry Evans Licking Cty. Treasurer v. Jallaq*, 5th Dist. No. 95CA-127 (Aug. 22, 1996) (the Treasurer accomplished sufficient service of process

---

[1] Appellant's motion also argued the final judicial report was untimely under R.C. 2329.191. The Treasurer responded that this statute does not apply when the county is foreclosing on a property tax lien for the state, citing R.C. 2329.22. Appellant's argument on this topic is not maintained on appeal.

where the Treasurer complied with R.C. 5721.18(A) in effecting service and the property owner did not comply with R.C. 323.13). The Treasurer also argued a property visit is not a prerequisite to the filing of a tax foreclosure action.

{¶16} Even assuming Appellant attempted to record the deed and was rejected, the Treasurer notes Appellant could have filed a mandamus action against the recorder or recorded an affidavit of facts relating to title. *See* R.C. 5301.252. *See also* R.C. 323.68(B). It was noted Appellant failed to explain why he never paid taxes or attempted to enter a payment plan since he purchased the property in 2012.

{¶17} Regarding the PTFA, the Treasurer responded: Appellant claims to be the owner, not a tenant; Appellant failed to show a "bona fide lease or tenancy" under the act; the act deals with mortgage foreclosures, not tax foreclosures; the act's sunset date passed by the time of the May 5, 2015 foreclosure decree and the June 15, 2015 property transfer; and the act calls for notice based upon the date the title is transferred by the foreclosure action.

{¶18} The trial court scheduled a hearing for January 6, 2016. On January 8, 2016, the court overruled the motion to intervene and the motion for relief from judgment. Appellant filed a timely notice of appeal from this judgment.

ASSIGNMENT OF ERROR

{¶19} Appellant's sole assignment of error provides:

"The trial court abused its discretion in denying the motion to intervene and the motion for relief from judgment."

{¶20} We begin with the denial of the motion to intervene. Appellant cites Civ.R. 24(A), which provides for intervention as a matter of right as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**{¶21}** Appellant states he had an interest in the property subject to litigation and his rights were not adequately protected. In arguing his post-judgment motion to intervene was timely, he relies on this court's *Laviena* case.

**{¶22}** In that case: a gunshot victim sued a shooter; the shooter submitted a claim to his insurer; the shooter's insurer filed a declaratory judgment action against him urging there was no duty to defend or indemnify the shooter due to an intentional act; and the trial court entered default judgment in favor of the insurer after the shooter failed to answer. *State Farm Fire & Cas. Co. v. Laviena*, 7th Dist. No. 04-MA-176, 2005-Ohio-6601, ¶ 2-3. Ten days later, the victim filed a motion to intervene and a motion for relief from judgment. *Id.* at ¶ 4. The magistrate permitted intervention but denied relief from judgment. *Id.* The trial court sustained the victim's objections to the magistrate's decision, granted the motion for relief from judgment, and vacated the default judgment. *Id.* at ¶ 5.

**{¶23}** The insurer appealed, arguing the trial court abused its discretion in granting relief from judgment as the victim failed to demonstrate a meritorious defense. *Id.* at ¶ 7. We disagreed, noting the Civ.R. 60(B) motion referred to the motion to intervene, which contained the victim's complaint filed in the action against the shooter and which alleged negligence in the shooting (constituting a merit defense to the insurer's declaratory judgment action). *Id.* at ¶ 18-21. We concluded the trial court did not abuse its discretion in granting relief from judgment. *Id.* at ¶ 21.

**{¶24}** Notably, *the decision on the motion to intervene was not before this court* in *Laviena*, which was an appeal from the subsequent decision to vacate a judgment. In any event, a trial court's granting of a motion to intervene in one case does not translate into precedent that a motion to intervene must be granted in another case. Factually, we note the post-judgment difference between 10 days and 6.5 months. Additionally, discretionary review can properly result in varying results among an array of different cases.

**{¶25}** As the parties agree, the standard of review of a trial court's decision on a motion to intervene is abuse of discretion. *State ex rel. Merrill v. ODNR*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41, citing *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 503, 696 N.E.2d 1058 (1998), fn. 1.

Although Civ.R. 24 should be construed liberally in favor of granting intervention, we cannot reverse unless the court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Merrill,* 130 Ohio St.3d 30 at ¶ 41; *State ex rel. First New Shiloh Baptist Church*, 82 Ohio St.3d at 503.

{¶26} The Ohio Supreme Court emphasizes the opening phrase in Civ.R. 24(A), *"Upon timely application * * *." State ex rel. First New Shiloh Baptist Church*, 82 Ohio St.3d at 502. The timeliness of the intervention motion depends upon the facts and circumstances of each case. *Id.* at 503. Some factors to consider when evaluating the timeliness of a motion to intervene include: (1) the stage of the case; (2) the reason behind intervention; (3) the amount of time before the application during which the movant knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the movant's failure to apply promptly for intervention after he knew or reasonably should have known of his interest in the case; and (5) the existence of unusual circumstances weighing in favor or against intervention. *Id.*, citing *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir.1984).

{¶27} In relation to the first factor, "Intervention after final judgment has been entered is unusual and ordinarily will not be granted." *State ex rel. First New Shiloh Baptist Church*, 82 Ohio St.3d at 503-504. On a post-judgment motion, an additional consideration can be the propriety of the trial court's judgment in the case. *Id.* at 504 ("Finally, it appears that even if appellants had been granted leave to intervene, the court of appeals' judgment granting the writ was appropriate."). As to the second factor, the purpose of intervention should be compelling. *Id.* (where intervention would result only in reconsideration of prior issues, it is not compelling).

{¶28} This case involves a post-judgment motion to intervene. It was filed 6.5 months after the foreclosure decree was journalized. A separate confirmation order was not required as the title was ordered to transfer and vest upon the expiration of 28 days from the court's order. *See* R.C. 323.28(E); R.C. 5721.19(I) ("the filing for journalization of a decree of foreclosure ordering that direct transfer without appraisal or sale shall constitute confirmation of the transfer and thereby terminate any further statutory or common law right of redemption."). *See also* R.C. 323.78(B).

**{¶29}** The tax foreclosure action had been pending for 7 months before the entry of the foreclosure decree. Prior to the filing of the complaint, over a year had passed since the taxes on the property were certified delinquent. Appellant filed the motion to intervene on November 20, 2015. Within the motion, he claimed he was unaware of the action until October 2015. He did not estimate a date within October that he saw Mahoning County Land Reutilization Corporation's van in the driveway.

**{¶30}** Appellant produced a deed whereby he claims to have purchased the property in mid-2012. Yet, he paid no property taxes to the county thereafter, and apparently taxes were already delinquent at the time he purchased the property. Service was made on the record owner by publication after an effort to serve the record owner at her tax mailing address and two other addresses failed. An affidavit listing the assistant prosecutor's efforts to search for another alternate address for the record owner was provided. The suit was advertised for three consecutive weeks as per R.C. 323.25 and R.C. 5721.18(A). The property address was specifically listed in the advertisement. Appellant's motion did not claim that a "provision for notice" in a relevant tax foreclosure may have been "abrogate[d]" or cite any such provision. *See* R.C. 5721.19(F)(4).

**{¶31}** Appellant knew from the beginning that the deed under which he claimed title had never been recorded. No property owner provided the Treasurer with a change of tax mailing address as required by R.C. 323.13. The Treasurer argued below that if his claim (about being denied recording merely due to unpaid taxes) was true, then he had years during which he could have filed a writ of mandamus against the recorder or filed an affidavit of facts relating to title under R.C. 5301.252. Appellant was not identifiable as a record owner at the time the action was filed or throughout the proceedings. This is not to say any of these facts are dispositive. Rather, they are collectively considered in evaluating the trial court's exercise of discretion.

**{¶32}** Next, Appellant's motion to intervene expressed his purpose for intervention was to file a motion for relief from judgment after which he would seek to redeem the property by entering into a written contract for repayment of delinquent taxes pursuant to R.C. 323.31. A delinquent tax contract can be entered after the

foreclosure action is filed in order to avoid the transfer of title. *See* R.C. 323.31(A)(3) ("The delinquent tax contract described in division (A) of this section may be entered into at any time prior to an adjudication of foreclosure * * *"). *See also* R.C. 323.25(B) (the county treasurer shall not enforce the lien for taxes against real property that is the subject of a valid delinquent tax contract under R.C. 323.31 which the county treasurer has not certified as void).

**{¶33}** However, the statute requires one opportunity to enter a delinquent tax contract with the Treasurer and only when a person owns and occupies residential real property and the property does not have an outstanding tax lien certificate (or judgment of foreclosure) against it. R.C. 323.31(A)(1) ("Subsequent opportunities to enter into a delinquent tax contract shall be at the county treasurer's sole discretion."). Appellant's affidavit acknowledges any contract was speculative: "If I am allowed to, I intend to bring the real estate taxes current by entering into a written contract for the repayment of delinquent real estate taxes." Appellant's filings did not address his eligibility for a delinquent tax contract.

**{¶34}** The motion to intervene filed by Appellant's attorney says Appellant "began residing in the real property * * *." Yet, Appellant's affidavit merely speaks of property in the yard and driveway (including a camper) and says he moved personal belongings into the house and was making repairs. It does not say he occupied the property or it was physically inhabited as a dwelling. *See, e.g.,* R.C. 323.31(A)(1); R.C. 323.65(F)(1)(a). Additionally, Appellant's affidavit says he began paying the owners of tax certificates for delinquent taxes when he bought the property. As the Treasurer points out, Appellant did not claim "the property does not have an outstanding tax lien certificate." *See* R.C. 323.31(A)(1).

**{¶35}** We also note that Appellant did not mention the property's soundness. Pursuant to R.C. 323.25 and R.C. 5721.25, any person entitled to redeem the land may do so, before the expiration of the applicable redemption period, by tendering the appropriate amount to the county treasurer "and by demonstrating that the property is in compliance with all applicable zoning regulations, land use restrictions, and building, health, and safety codes."

In addition, *after a foreclosure proceeding has been instituted, but* before the filing of an entry of confirmation of sale pursuant to the proceeding or *before the expiration of the alternative redemption period as may apply under section 323.78* of the Revised Code, any person entitled to redeem the land who has not previously defaulted on a delinquent tax contract under section 323.31 of the Revised Code with respect to that delinquent land *may enter into a delinquent tax contract* with the county treasurer for the payment of the taxes, assessments, penalties, interest, and charges found to be due and unpaid on such land, together with the costs incurred in the proceeding as determined by the court or board of revision, *upon demonstrating that the property is in compliance with all applicable zoning regulations, land use restrictions, and building, health, and safety codes.* The execution of a delinquent tax contract shall not stop the prosecution of a proceeding to judgment. The delinquent tax contract shall be paid as prescribed by section 323.31 of the Revised Code over a period not to exceed five years after the date of the first payment made under the contract. The delinquent tax contract may be terminated if the court or board of revision determines that the property is not in compliance with all applicable zoning regulations, land use restrictions, and building, health, and safety codes during the term of the contract. The court or board of revision shall retain jurisdiction over the delinquent land until the total amount set forth in the delinquent tax contract is paid, notwithstanding any conveyance of the land to another owner during the period that the delinquent tax contract is outstanding.

(Emphasis added). R.C. 5721.25.

{¶36} Although the above analysis would pertain to Appellant failing to set forth operative facts in support of a meritorious defense under his Civ.R. 60(B) motion, the purpose of seeking to intervene is also a consideration in reviewing a motion to intervene (as is the inevitably of the court's decision). *See State ex rel. First New Shiloh Baptist Church*, 82 Ohio St.3d at 503-504. The trial court would not

abuse its discretion in finding the purpose of intervention expressed in Appellant's motion to intervene was not "compelling." *Id.*

**{¶37}** A less compelling reason for his requested intervention is expressed in the motion for relief from judgment and reiterated on appeal as his second argument in support of a meritorious defense.[2] The remaining meritorious defense raised in Appellant's brief is he would avail himself of the federal PTFA if the motion for relief from the foreclosure judgment is granted. *See* Protecting Tenants at Foreclosure Act of 2009, Pub.L. No. 111-22, Section 701-704, 123 Stat. 1632, 1661 (formerly codified at 12 U.S.C. 5220).

**{¶38}** As the Treasurer emphasizes, Appellant claims to be the owner, not a tenant. Appellant replies that since he was not permitted to record his deed, he should at least be considered a tenant and his $5,000 purchase price can be considered rent as required for a bona fide tenancy under the Section 702(b)(3) of the PTFA.

**{¶39}** The parties dispute whether the PTFA applies to tax foreclosures. The Treasurer urges it only applies to foreclosures on mortgages as it is part of a larger act dealing with the prevention of mortgage foreclosures. In addition, the PTFA requires a bona fide lease or tenancy, which only exists "if the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant" plus two other elements. Section 702(b)(1).

**{¶40}** Regardless, the PTFA provided for notice to vacate to a bona fide tenant and a right to occupy the premises until the end of the lease term in the case of a bona fide lease. Section 702(a)(1)-(2). *See also Mik v. Federal Home Loan Mtge. Corp.*, 743 F.3d 149, 157 (6th Cir.2014) ("The PTFA protects tenants who reside in properties that are subject to foreclosure by imposing certain obligations on successors in interest to foreclosed properties."). Appellant does not explain how the PTFA could provide a defense to a foreclosure action or a reason to intervene in the action.

---

[2] Appellant's motion for relief from judgment used the same arguments for the meritorious defense prong as were used for the entitlement to relief prong. On appeal, he distinguishes between the prongs and divides his arguments accordingly. The argument section of Appellant's brief lists two proposed meritorious defenses: he would enter a delinquent tax contract to prevent transfer of title; and the PTFA provides protections. (Appellant's Brief at 6-7).

**{¶41}** Furthermore, the PTFA had a sunset date. Pursuant to Section 704, "This title, and any amendments made by this title are repealed, and the requirements under this title shall terminate on December 31, 2012." As Appellant acknowledges, the sunset date was later extended but only through December 31, 2014. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. 111-203, Section 1484(2), 124 Stat. 1376, 2204 (2010). *See also id.* at Section 1484(1)(B) (providing that the date of a notice of foreclosure is the date on which complete title to the property is transferred to a successor as a result of a court order).

**{¶42}** The foreclosure decree here was entered on May 5, 2015, and the property transfer occurred after the 28-day alternative redemption period (starting on the May 5 journalization of the decree). Consequently, Appellant's citation to the PTFA does not set forth operative facts showing he has a meritorious defense to present if relief from foreclosure were to be granted and does not provide a compelling reason for intervention more than six months after the foreclosure decree.

**{¶43}** "Intervention after final judgment has been entered is unusual and ordinarily will not be granted." *State ex rel. First New Shiloh Baptist Church*, 82 Ohio St.3d at 503-504. Considering all of the facts and circumstances of this case pertinent to the intervention motion, the trial court properly exercised its discretion in denying Appellant's motion to intervene.

**{¶44}** The trial court's decision is also supported procedurally. On the same day Appellant filed a motion to intervene, he filed a motion for relief from judgment and an affidavit. *No pleading was ever filed to accompany the motion to intervene.* As the Treasurer points out, Civ.R. 24(C) provides: "The motion and any supporting memorandum shall state the grounds for intervention and *shall be accompanied by a pleading*, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought." (Emphasis added).

**{¶45}** Civ.R. 24(C) specifically cites Civ.R. 7(A) for the definition of a pleading. Pursuant to Civ.R. 7(A):

There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer

contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Civ.R. 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Notably, the prior version of Civ.R. 24(C) called for the intervention motion to be accompanied by a pleading as well but did not cite to Civ.R. 7(A). The rule was amended in 1999 in order to reinforce the definition of a pleading as one that falls under Civ.R. 7(A). *See* Staff Note to Civ.R. 24(C) (1999) ("The 1999 amendment was intended to clarify that the 'pleading' to be filed with a motion to intervene requires more than just a memorandum in support of the motion to intervene.").

{¶46} Motions to intervene are regularly denied (and/or the denial upheld) due to the failure to attach a pleading as required by Civ.R. 24(C). *See, e.g., State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.,* 121 Ohio St.3d 507, 2009-Ohio-1523, 905 N.E.2d 1192, ¶ 21-22; *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, fn. 1; *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 144, 656 N.E.2d 1277 (1995).

{¶47} The Treasurer raised this failure below when responding to Appellant's motion to intervene. However, Appellant did not seek to correct the failure prior to the scheduled hearing on the motion or prior to the subsequent ruling on the motion; nor does Appellant address the omission on appeal. In accordance, the trial court's decision denying Appellant's motion to intervene is upheld on this ground as well. *See id.*

{¶48} As the Treasurer points out, if Appellant is not permitted to intervene, then his motion for relief from judgment under Civ.R. 60(B) need not be addressed. We uphold the trial court's judgment denying intervention. Therefore, the Civ.R. 60(B) motion is moot as it was filed in case the court granted intervention. *See* Motion for Relief ("Now comes intervenor * * *"). Only a party or his legal representative can file a Civ.R. 60(B) motion. The plain language of the rule provides, "On motion and upon such terms as are just, the court may relieve a party

or his legal representative from a final judgment, order or proceeding * * *".  Civ.R. 60(B).

{¶49}  Due to this language, "a person or entity who is neither a party nor a legal representative of a party may not properly obtain relief from a judgment by way of Civ.R. 60(B), unless that person or entity first becomes a party through intervention under Civ.R. 24."  *Nicholas v. State Farm Ins.*, 11th Dist. No. 99-T-0030 (June 9, 2000).  Where intervention is not granted to a movant, the movant's motion for relief from judgment must be denied as well.

{¶50}  For all of these reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

DeGenaro, J., concurs.